UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ARTURO ORTEGA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| VS. | )   Civil Action No.  5:11-CV-00836-XR |
| | ) |
| INTERPERFORMANCES, INC. | ) |
| | ) |
|     Defendant. | ) |
| | ) |
| | ) |
| | ) |

**ORDER**

On this date, the Court considered Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, as well as Plaintiff's Response and Defendant's Reply.  After careful consideration, the Court denies the Motion to Dismiss for Lack of Personal Jurisdiction.

**I.  Background**

Plaintiff, Arturo Ortega, alleges that Interperformances, Inc. breached an agreement whereby Interperformances agreed to pay Plaintiff a percentage of the fee received from each sports player he referred to Interperformances as a client and who subsequently entered into a contract with a NBA team.  Plaintiff, a resident of Spain, initially brought this breach of contract action in a Texas state district court.  The state court petition brought claims against Interperformances and Herbert L. Rudoy.  These defendants are residents of Illinois.  The defendants removed the case to this court on the basis of diversity jurisdiction and filed a motion to dismiss for lack of personal jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(2).[1]

After the motion to dismiss was filed, the parties stipulated to the dismissal of Rudoy as a defendant. Accordingly, the Court will proceed to determine whether general or specific jurisdiction exists as to Interperformances.

Plaintiff states in his affidavit that the referral fee agreement mentioned above was offered to him by Luciano Capicchioni in Spain or Italy in 1995/1996. Mr. Capicchioni is a co-president and co-owner of Interperformances. Plaintiff alleges that for a number of years he was paid the referral fees as agreed by Interperformances or Rudoy. Plaintiff states that he referred to Rudoy and Interperformances four athletes who later signed as players for the San Antonio Spurs. Plaintiff states that Rudoy flew to San Antonio to negotiate Manu Ginobili's contract in person. He also states that Rudoy flies to San Antonio to meet with Mr. Ginobili and the San Antonio Spurs general manager once every season. After Tiago Splitter (another referral) was drafted by the Spurs in June 2007, Rudoy attended a press conference in San Antonio. Plaintiff further alleges that he met with Rudoy and Mr. Ginobili in San Antonio on one occasion to discuss referral arrangements.

In addition to his own affidavit, Plaintiff submitted the affidavit of Jaime Ibanez. Mr. Ibanez states that he has been a resident of Texas for over 30 years, recruited Texas athletes for Interperformances, and was paid commissions for such recruitment. Mr. Ibanez also states that

---

[1]The plaintiff bears the burden of proof to show that a nonresident defendant is subject to the Court's jurisdiction. However, a plaintiff need only establish a prima facie case of jurisdiction; proof by a preponderance of the evidence is not required. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999); *Jones v. Petty–Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). After the prima facie case is made that a defendant purposefully established minimum contacts within the forum state, the defendant bears the burden to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

another individual and Texas resident (Agustin Gonzalez) was hired by Interperformances to run its baseball operations and that Mr. Gonzalez actively recruited and managed baseball players on behalf of Interperformances while he was based in Houston.

Mr. Rudoy states in his affidavit that he is the co-president of Interperformances, Inc. and that Illinois corporation has its principal office in Chicago, Illinois. Mr. Rudoy states that he is a licensed attorney in Illinois and his practice "consists of representing athletes in their negotiations with prospective professional sports teams." Mr. Rudoy also states that he is a "registered agent with the National Basketball Players Association, which allows [him] to negotiate with NBA teams." He further states that he conducts these "negotiations on behalf of Interperformances and as authorized agent for the players from time to time."

With regard to Interperformances, Mr. Rudoy states: Interperformances was incorporated in Illinois in 1994, maintains its principal office in Chicago, and has representatives in 14 nations. The corporation represents more than 300 athletes who are employed by professional sports teams in over 20 countries.

Mr. Rudoy states that Interperformances has never registered to do business in Texas, has never maintained an office in Texas, and has no representatives in Texas. He also states: "even though Interperformances has represented professional athletes who have played for Texas teams, it does not send people to the state on a regular basis to develop business or negotiate contracts. All of the contracts Interperformances has ever negotiated for any athletes playing on Texas teams have been negotiated by telephone from Chicago."

With regard to any alleged agreement between Interperformances and the Plaintiff, Mr. Rudoy states that any such agreement would have been negotiated either in Europe or Chicago.

## II.  Personal Jurisdiction

"A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if 1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and 2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution."  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). An individual's liberty interest is protected by the Due Process Clause of the Fourteenth Amendment, which prevents an individual or corporate defendant from being subjected to a binding judgment in a state in which he or she has not established meaningful "contacts, ties, or relations." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).  Texas's long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the Due Process Clause.  *Johnston v. Multidata Systems Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  To prove that the exercise of personal jurisdiction is consistent with due process, a plaintiff must establish that "1) the [defendant] purposely availed himself of the benefits and protections [of Texas] by establishing 'minimum contacts' with the state; and 2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id*.

Minimum contacts can give rise to either specific jurisdiction or general jurisdiction.  *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).  Specific jurisdiction will arise if the foreign defendant's contacts with the forum state are directly related to the cause of action.  *Id*.  If a foreign defendant "purposely avails" himself of the privilege of conducting activities in the forum state, and the cause of action arises out of or relates to that activity, then specific jurisdiction may exist.  *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 718 (5th Cir. 1999).  In order to determine whether specific jurisdiction exists, only "the contact out of which the cause of action arises" will

need to be analyzed. *Revell*, 317 F.3d at 472.

If the foreign defendant's contacts are not directly related to the cause of action in order to confer specific jurisdiction, general jurisdiction may nonetheless arise if the defendant's contacts with the forum state are both "continuous and systematic." *Wilson*, 20 F.3d at 647. When ruling on general jurisdiction issues, Texas maintains a fairly high standard set by the Supreme Court. *Johnston*, 523 F.3d.at 611. The general requirements of the "continuous and systematic" test are difficult to satisfy. *Id*. at 609. "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007). Even repeated contacts with the forum state may not rise to the level of being systematic and continuous. *Revell*, 317 F.3d at 471.

General jurisdiction can be evaluated by the defendant's contacts with the forum state over a number of years. *Access Telecom*, 197 F.3d at 717. A defendant's contacts with the forum state "must be reviewed in toto, and not in isolation from one another." *Johnston*, 523 F.3d at 610. "Even if a number of different contacts are independent of one another, if they occur with such frequency that the contacts in general are 'continuous and systematic,' there is general jurisdiction." *Access Telecom*, 197 F.3d at 717.

Once it has been established that the foreign defendant has sufficient minimum contacts with the forum state, we must then establish whether "traditional notions of fair play and substantial justice" have been satisfied. *Wilson*, 20 F.3d at 647. The court will consider a number of factors when making this inquiry: "(1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies'; and (5) 'the shared interest of the several

States in furthering fundamental substantive social policies.'" *Id*. (quoting *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990)).

### III.  Analysis

The Plaintiff contends that both specific and general jurisdiction exist over the Defendant.

**A.  Specific Jurisdiction**

To establish specific jurisdiction, Plaintiff points to contracts Rudoy negotiated with the San Antonio Spurs for Manu Ginobli in 2004 and 2009 and another contract negotiated with the San Antonio Spurs for Fabricio Oberto in 2005 and asserts that this dispute is directly related to these contracts.  Where the plaintiff alleges specific jurisdiction, "due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable."   *ITL Intern., Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). "Unlike general jurisdiction, which requires that the defendant's purposeful contacts with the forum state be "continuous and systematic," specific jurisdiction may exist where there are only isolated or sporadic contacts, so long as the plaintiff's claim relates to or arises out of those contacts." *Id.* at 498-99.

The contracts arising from the Texas players in this case were negotiated by Rudoy, on behalf of Interperformances, resulting in Standard Player Agent Contracts.  These contracts were negotiated by Rudoy with Texas residents in which Rudoy traveled to Texas to visit with and maintain business relations with these players.  Accordingly, the first prong (minimum contacts) has been met.  The remaining two prongs, however, must be addressed.  There must be a nexus between the defendant's contacts and the plaintiff's claims.

In his petition Plaintiff claims that although he is a "player agent who for many years has represented professional basketball and soccer players in Europe," he is not a certified player agent for the NBA. Accordingly, he claims that he entered into a verbal agreement with Interperformances to refer his NBA caliber clients to it in exchange for a fee. Plaintiff claims he is owed commissions related to San Antonio Spurs player Manu Ginobili and former Spurs player Fabricio Oberto. In addition, he claims he is owed commissions related to Memphis Grizzlies player Marc Gasol, former Memphis player Greivis Vásquez, former Cleveland and Miami player Žydrunas Ilgauskas, former Toronto player Jorge Garbajosa, former Denver and current Toronto player Linas Kleiza, and former Sacramento and current New York Knicks player Sergio Rodriguez.

As was the case in *ITL Intern., Inc. v. Constenla*, *supra*, there is an insufficient nexus between Plaintiff's claim in this case and the Defendant's Texas contacts. The Defendant's agent, Rudoy, traveled to Texas to negotiate and execute player agreements. These agreements are not in dispute in this case. The dispute in this case centers on whether the verbal agreement (and later signed written letters) entered into between Plaintiff and Defendant were breached and how much, if anything, Defendant may owe Plaintiff. None of the Defendant's Texas contacts have a nexus to the Plaintiff's claims in this lawsuit. The mere fact that the San Antonio Spurs organization signed Mr. Ginobili and Mr. Oberto may have some bearing on Plaintiff's claims to the extent it may impact the calculation of commissions that may be owed; however, that is the only nexus. Under that theory, specific jurisdiction would extend to Denver, Cleveland, New York, etc.

**B**. **General Jurisdiction**

In order to assess whether general jurisdiction exists, Interperformances' contacts over a number of years must be examined to determine whether those contacts rise to the level of

"continuous and systematic." In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, the Supreme Court held that the defendant's contacts with the forum state, while extensive, did not rise to the level of systematic and continuous to confer general jurisdiction over that defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418-19 (1984). In that case, the Court held that the defendant's contacts with the forum state through purchases from and related trips to the state did not establish sufficient minimum contacts to comport with the Due Process Clause of the Fourteenth Amendment. *Id*.

Plaintiff puts forth two arguments to establish general jurisdiction. First, that over a 17-year period, Defendant (through its agents) negotiated at least nine contracts with two different Texas-based NBA teams. While Defendant does not contest that the negotiations with Texas teams and players took place, it maintains that these negotiations took place in Illinois.

Plaintiff's second argument is that Defendant maintained a business office in Houston, in which it paid a Texas resident to negotiate contracts with other Texas residents. Defendant disputes these allegations and argues that Defendant has never had any business presence within the State of Texas, other than sporadic contacts through contract negotiations. In its Reply brief, Defendant argues that Plaintiff's statement that Rudoy travels to San Antonio on a regular basis "is inadmissible hearsay now that Rudoy is not a party to this case." The corporate defendant can only travel to the state of Texas through its agents. Accordingly, whether Rudoy is an individual defendant or not is relevant to the determination of whether personal jurisdiction exists as to Interperformances. Defendant also objects to the affidavit of Jaime Ibanez to the extent it discusses Agustin Gonzalez. Defendant objects to that portion of the affidavit because Mr. Ibanez fails to state how he has personal knowledge of the relationship between Mr. Gonzalez and Interperformances. That

objection is sustained. Nevertheless, Defendant fails to acknowledge the remainder of Mr. Ibanez's affidavit wherein he states that as a resident of Texas he worked for Interperformances, recruited for them and was paid commissions by them for recruiting Texas athletes to use Defendant as their agent.

"On a motion to dismiss for lack of jurisdiction, uncontroverted allegation in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Johnston*, 523 F.3d at 609. If Plaintiff's allegations are to be taken as true that Defendant paid Texas residents to recruit athletes who resided in Texas, Defendant's actions rise to the level of doing business *in* Texas. In addition, Plaintiff states that Defendant's agent Rudoy regularly and continuously visits Texas to meet with his Texas clients.

Because Plaintiff has established sufficient contacts with the forum to confer general jurisdiction over Defendant, we must now determine whether subjecting Defendant to the jurisdiction of the State of Texas would satisfy the notions of "fair play and substantial justice." As stated previously, the court considers a number of factors in making a determination of whether the exercise of personal jurisdiction over a defendant will be fair and reasonable. Those factors are "(1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies'; and (5) 'the shared interest of the several States in furthering fundamental substantive social policies.'" *Wilson*, 20 F.3d at 647.

Defendant asserts that the State of Texas has no interest in this case and that there are no substantive social policies among the shared interest of several states, which would render the

second, fourth, and fifth factors inapplicable. While this may be true, it does not necessarily mean that the exercise of personal jurisdiction over Defendant is unfair and unreasonable.  Defendant engages in a world-wide business and its co-presidents travel frequently meeting with athletes and negotiating player agreements.  Defendant also argues that any necessary witnesses and documents will likely reside in Chicago.  Based upon the limited documents presented to the Court, it appears there are only three key witnesses in this case - Plaintiff, Mr. Rudoy and Mr. Capicchioni.  The reality is that someone will have to travel in this case, either from Spain, Miami, San Marino or Chicago.  This Court finds that the exercise of personal jurisdiction in this case satisfies the "traditional notions of fair play and substantial justice."

## Conclusion

Plaintiff has established a prima facie case that the exercise of personal jurisdiction over Defendant is consistent with due process. Defendant's 12(b)(2) Motion to dismiss for Lack of Personal Jurisdiction is **DENIED**.

It is so ORDERED.

SIGNED this 17th day of April, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE